## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                     :    Chapter 11
SEMCRUDE, L.P., et al.,                    :    Case No.: 08-11525 (BLS)
                Debtors.                   :    Jointly Administered
                                           :
------------------------------------------------------- :
------------------------------------------------------- :
J. ARON & COMPANY,                         :
                Plaintiff,                 :
                                           :
v.                                         :    Adversary No. 09-50038 (BLS)
                                           :
SEMGROUP, L.P., et al.,                    :
                Defendants.                :
                                           :
------------------------------------------------------- :
```

---

## J. ARON & COMPANY'S OPPOSITION TO
## DEBTORS' MOTION IN AID OF CONFIRMATION OF PLAN

| CLEARY GOTTLIEB STEEN & HAMILTON LLP | ASHBY & GEDDES, P.A. |
|---|---|
| Thomas J. Moloney (Admitted *Pro Hac Vice*) | Don A. Beskrone (#4380) |
| Boaz S. Morag (Admitted *Pro Hac Vice*) | Amanda M. Winfree (#4615) |
| One Liberty Plaza | 500 Delaware Avenue, 8th Floor |
| New York, New York 10006 | P.O. Box 1150 |
| Telephone: 212-225-2000 | Wilmington, DE 19899 |
| Fax: 212-225-3999 | Telephone: 302-654-1888 |
| | Fax: 302-654-2067 |

COUNSEL TO J. ARON & COMPANY

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND .............................................................................................. 6

ARGUMENT................................................................................................... 12

I. THE DEBTORS HAVE NO RIGHT TO RELEASE THE ESCROWED FUNDS UNDER THE TENDER ORDER ............................................................... 12

    A. The Terms of the Tender Order Do Not Allow Release of the Funds Prior to the Adjudication of Rights in the Tendered Funds................................. 12

    B. The Negotiating History Belies The Debtors' Claims About The Funds ........................................................................................... 17

II. THE BANKRUPTCY CODE PROTECTS J. ARON'S RIGHTS AND FORBIDS THE DEBTORS' REQUESTED RELIEF ........................................................ 20

III. THE DEBTORS DO NOT MEET THE REQUIREMENTS FOR TURNOVER AND PROVIDE NO ADDITIONAL BASIS FOR THE RELIEF SOUGHT HERE............................................................................................................... 22

    A. Debtors Are Not Entitled to Turnover of the Funds Under Section 542(b) Because the Funds Are Subject to J. Aron's Setoff Rights, Because Title to the Funds Is in Dispute, and Because the Debtors' Attempt to Seek Turnover by Motion Is Procedurally Defective........................................... 22

    B. None of the Additional Authority Cited by the Debtors Provides Them the Relief They Seek ...................................................................................... 27

CONCLUSION ............................................................................................... 29

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 105 ............................................................................................................ 4-5, 22, 27

11 U.S.C. § 362(b)(6) ................................................................................................... 21

11 U.S.C. § 362(o) ........................................................................................................ 21, 28

11 U.S.C. § 363 ............................................................................................................. 4, 11

11 U.S.C. § 363(a) ........................................................................................................ 21

11 U.S.C. § 363(b) ........................................................................................................ 21

11 U.S.C. § 363(e) ........................................................................................................ 21

11 U.S.C. § 506 ............................................................................................................. 4

11 U.S.C. § 506(a) ........................................................................................................ 20

11 U.S.C. § 506(b) ........................................................................................................ 20

11 U.S.C. § 542(a) ........................................................................................................ 11

11 U.S.C. § 542(b) ........................................................................................................ passim

11 U.S.C. § 1129 ........................................................................................................... 4-5, 27-28

11 U.S.C. § 1142 ........................................................................................................... 4-5, 27-28

Fed. R. Bankr. P. 7001 ................................................................................................. 25

Fed. R. Bankr. P. 7001(1) ............................................................................................ 11, 26

Fed. R. Bankr. P. 7056 ................................................................................................. 1, 26

**Cases**

Ches-Mont Utils. Constr. Co. v. Willistown Woods Assocs.,
1992 WL 96335 (E.D. Pa. Apr. 24, 1992) .................................................................. 24

In re Allegheny Label, Inc.,
128 B.R. 947 (Bankr. W.D. Pa. 1991) ........................................................................ 23

In re Am. Bus. Fin. Servs., Inc.,
361 B.R. 747 (Bankr. D. Del. 2007) ........................................................................... 24-25

In re Am. Home Mortgage Holdings, Inc.,
388 B.R. 69 (Bankr. D. Del. 2008).................................................................... 23

In re Barringer,
244 B.R. 402 (Bankr. E.D. Mich. 1990).......................................................... 26-27

In re Cinderella Clothing Indus., Inc.,
93 B.R. 373 (E.D. Pa. 1988)............................................................................. 28

In re FLR Co.,
58 B.R. 632 (Bankr. W.D. Pa. 1985)................................................................ 24-25

In re Flynn,
143 B.R. 798 (Bankr. D.R.I. 1992).................................................................... 21

In re Kmart Corp.,
359 F.3d 866 (7th Cir. 2004)............................................................................. 27

In re Lexington Healthcare Group, Inc.,
363 B.R. 713 (Bankr. D. Del. 2007).................................................................. 25

In re Lindsey,
351 B.R. 733 (Bankr. D. Idaho 2005)............................................................... 26

In re Nase,
297 B.R. 12 (Bankr. W.D. Pa. 2003)................................................................ 22

In re Pa. Gear Corp.,
2008 WL 2370169 (Bankr. E.D. Pa. Apr. 22, 2008)......................................... 23

In re Patterson,
967 F.2d 505 (11th Cir. 1992).......................................................................... 21

In re Perkins,
902 F.2d 1254 (7th Cir. 1990)........................................................................... 26

In re Phar-Mor, Inc. Sec. Litig.,
166 B.R. 57 (W.D. Pa. 1994)............................................................................ 27-28

In re Riding,
44 B.R. 846 (Bankr. D. Utah 1984).................................................................. 26

In re Rozel Indus., Inc.,
120 B.R. 944 (Bankr. N.D. Ill. 1990)................................................................ 20

In re Student Fin. Corp.,
335 B.R 539 (D. Del. 2005).............................................................................. 23

|  | Page(s) |
|---|---|
| In re Szymanski,<br>2009 WL 2870008 (Bankr. E.D. Pa. Aug. 12, 2009) ........................... | 20 |
| In re TM Carlton House Partners, Ltd.,<br>93 B.R. 859 (Bankr. E.D. Pa. 1988) .................................................. | 22 |
| In re Trans World Airlines, Inc.,<br>275 B.R. 712 (Bankr. D. Del. 2002).................................................. | 21 |
| In re Wheeler Tech., Inc.,<br>139 B.R. 235 (B.A.P. 9th Cir. 1992) ................................................. | 26 |
| S. Ry. Co. v. Johnson Bronze Co.,<br>758 F.2d 137 (3d Cir. 1985) .......................................................... | 27 |

## Other Authorities

| 7-1129 Collier on Bankruptcy P 1129.02 (15th ed. rev.) ........................... | 28 |
| 8-1142 Collier on Bankruptcy P 1142.01 (15th ed. rev.) ........................... | 28 |

# J. ARON & COMPANY'S OPPOSITION
## TO DEBTORS' MOTION IN AID OF CONFIRMATION OF PLAN

J. Aron & Company ("J. Aron") respectfully submits this Opposition to the

Debtors' Motion in Aid of Confirmation of Plan (the "Motion").

## PRELIMINARY STATEMENT

The Debtors have struck a deal in a mediation, to which J. Aron and similarly

situated trading partners and customers of the Debtors were not invited, to fund their

reorganization plans at these unrepresented parties' expense.[1] In furtherance of their term-sheet

agreement, the Debtors request that this Court ignore J. Aron's substantive rights under its

contracts with the Debtors, the Bankruptcy Code and Rules, and the explicit terms of an agreed-

upon Court order and grant the Debtors the equivalent of summary judgment in an adversary

proceeding in which they have even now failed to ask for such relief.[2]

This extraordinary and unlawful request is not necessary to achieve the Debtors'

ostensible goals because, to the extent that the Debtors and other plan proponents require access

to the $89 million now held in escrow to fund a plan, J. Aron has already agreed to a settlement

with the Debtors that would provide access to such funds. As part of that settlement, which has

been fully documented and was presented by the Debtors for approval by this Court in

November 2008, but then later withdrawn without prejudice, J. Aron would release its claims to

attorneys' fees – which are substantial as a result of the multiple litigations it has been subjected

---

[1]    As the Court is no doubt aware as a matter of experience, it is not an unusual development in bankruptcy cases for parties to reach tentative agreement at the expense of "parties not in the room." What is unusual here is the lack of any real effort on the part of the Debtors to reach out to such parties to attempt to forge a consensus before this motion was filed.

[2]    In the Debtors' Answer and Counterclaims to J. Aron's Tender Adversary complaint, they asserted as their second counterclaim a demand for turnover relief. J. Aron has responded to that claim by denying all of the Debtors' allegations and by asserting a number of affirmative defenses, including a defense based on its right of offset. For the Debtors to obtain the relief they seek here, they must comply with Bankruptcy Rule 7056 and move for summary judgment on their claim, which they have not done.

to as a result of dealing with the Debtors – and in return would obtain releases from the Debtors and their creditors, including the Producers. Despite the passage of time and the significant additional litigation costs it has incurred, J. Aron remains willing to honor and proceed with the terms of this agreement. Accordingly, J. Aron has no objection to the Court's granting of the requested relief provided that it is conditioned on the granting of the full releases to J. Aron provided for by the originally proposed settlement agreement.

Considerations of expediency cannot override legal rights and cannot justify permitting the Debtors to rewrite their settlement agreement with J. Aron. Nor can they justify this attempt by the Debtors to erase the bargained-for terms of J. Aron's Order for Payment of Funds (the "Tender Order") [D.I. 77 in Adv. Case No. 09-50038] upon which J. Aron tendered the Funds, which were consented to by both the Debtors and the OPC, represented to the Court at the June 2, 2009 hearing, and relied upon by the Court in approving the transaction that is embodied for in the Tender Order.[3] That the Debtors are attempting to renege on their agreement is facially obvious from the terms of the Tender Order, and confirmed by the affidavit of Evan A. Davis filed herewith, and even admitted by Andrew Turner, the counsel for the Debtors through whom the negotiations were conducted.[4]

The Debtors have provided no authority whatsoever that would justify overriding J. Aron's substantive rights under its agreements with the Debtors, the Bankruptcy Code, and the explicit terms of an agreed-upon Court order. The Debtors' mischaracterizations of it aside, the Tender Order was entered in J. Aron's Tender Adversary as a form of interpleader to protect J. Aron from double liability and to protect J. Aron's secured netting and setoff rights by requiring

---

[3] Declaration of Evan A. Davis, sworn to September 22, 2009 (the "Davis Decl.") ¶ 16, Ex. 6 at 40:24-41:3 (Unofficial Hearing Transcript, *J. Aron & Co. v. SemGroup L.P. (In re SemCrude, L.P.)*, Adv. Pro. No. 09-50038 (BLS) (Bankr. D. Del.) (June 2, 2009)) ("June 2 Hr'g Tr.").

[4] See Davis Decl. ¶ 15.

2

all parties with claims to the *res* tendered (the "Funds"), including the Producers, the Debtors, and J. Aron itself, which has several secured claims to the Funds including claims for breach of warranty, indemnity, and attorneys' fees, to pursue them as claims on that *res*. While this Court has not yet adjudicated the competing claims to this *res*, the Debtors' Motion asks the Court, in effect, simply to grant summary judgment in their favor and award them sole possession of the Funds because it is purportedly necessary to the completion of a plan of reorganization, despite (1) the Debtors' never having filed a motion seeking that relief and (2) the Court never having adjudicated the rights of the parties to the adversary proceeding. It appears that the Debtors have conditioned their plan on winning counterclaims in a lawsuit against J. Aron that they have not even prosecuted.

The Debtors' utter disregard of the procedural and substantive rights of J. Aron goes even further. Their position is that their recent term-sheet agreement with the Producers justifies the abrogation of their earlier, fully consummated and Court-approved agreement with J. Aron resolving their application for a Tender Order in the Tender Adversary. And unlike the not-yet consummated settlement agreement said to give rise to this emergency motion, all affected parties participated in the crafting of the settlement agreement memorialized in the Tender Order. All agreed, for example, that the funds would be held as if paid into court; that all claims thereto would be adjudicated in the Bankruptcy Court; that J. Aron's rights in the tendered *res*, and the priority of those rights, would remain as if the funds had not been tendered; and that any party having a claim to the funds that failed to make it would have that claim barred and released to the full extent of the tendered amount plus accrued interest.[5]

---

[5] Although J. Aron does not believe there is any basis whatsoever for depriving it of the benefits of the Tender Order, if the Debtors were to obtain any relief from that order, it should be limited to returning the funds to J. Aron and restoring the parties to the position they were in before the Tender Order was entered. If the Debtors then believe they have some right to obtain funding from J. Aron they would be free to pursue it and J. Aron would be

3

To justify this abrogation of these and other plain and agreed terms of settlement, the Debtors provide no support whatsoever beyond their purported need for the Court to ignore these terms in order to appease the Producers.  Indeed, not only does the Motion provide no actual authority to support its request, it is replete with, and indeed premised upon, actual falsehoods – the most obvious being that "[i]t is undisputed that none of the Tender Plaintiffs have any entitlement to the Tendered Funds." Motion ¶ 10.  Quite simply, the Tender Order does not provide the Debtors with the rights they seek, so they have invented them.  The Tender Order is clear:  J. Aron deposited the disputed funds into the Court subject to clear provisions that secure its indemnity, breach of warranty, attorneys' fees, and other claims against the Debtors that arise from the multiplicity of Samson's and other Producers' lawsuits against J. Aron exposing it to a risk of double liability and to provide a *res* to satisfy any of those claims such that any Producer not asserting its claims against that *res* would be barred and released to the full extent of those funds plus accrued interest.

The Debtors also ignore – because they must – that J. Aron's breach of warranty, indemnity, and attorneys' fees and other expenses are secured claims expressly protected by 11 U.S.C. §§ 363 and 506, or are otherwise protected by the Bankruptcy Code.  The Debtors may not obtain the relief they seek if that relief is effectuated to J. Aron's detriment.  J. Aron <u>must</u> be given, at the very least, adequate protection.  Congress created special protections for parties like J. Aron in enacting the safe harbor provisions protecting forward contract merchants, and the Debtors cannot wish those away just to get their deal done.

While the Motion purports to base its relief on Sections 105, 542(b), 1129, and 1142 of the Bankruptcy Code, in fact, none of these sections is remotely applicable.  Section

---

free to oppose or otherwise respond as it believed appropriate, including, potentially negotiating some alternative form of protection of its interest in preserving its rights to obtain reimbursement of its considerable and growing legal fees and to be protected against double recoveries.

542(b) does not provide any support, as there is an explicit exception in Section 542(b) protecting setoff rights. Moreover, as the Debtors have never proven that they meet the fundamental requirement for turnover – the Debtors' undisputed entitlement to the funds – and the Tender Order's conditions on the deposit of the funds show, to the contrary, that many parties are claiming conflicting entitlements. Section 105 provides the Debtors with no additional substantive rights they do not have under another section of the Code and is of no value here. Section 1129 simply establishes the requirements for a plan to be confirmed and Section 1142 provides the Court with powers to assist the Debtor in carrying out, among other things, transfers of property pursuant to a underline confirmed plan. There is no plan here; there is not even a disclosure statement. These sections do not provide the Debtors' cause with any assistance and certainly do not justify the extraordinary remedy they seek here.

The parties and the Court sincerely may wish for this protracted case to go away and for the Debtors to emerge from bankruptcy, but that does not provide a defensible basis to steamroll the rights of creditors who have been left purposely out in the cold. The Tender Order and the Bankruptcy Code protects those rights, and the Debtors' Motion provides no basis whatsoever to discard them as the Debtors blithely seek to do with the Motion. It should be denied. If the terms of the Tender Order are to be abrogated, and if the alternative of reinstituting the proposal to provide J. Aron with full releases from all parties including the Producers is not activated, then the money J. Aron tendered should be returned to it as it was obtained under false pretenses.

## BACKGROUND

1.     As the Court is well aware, SemGroup provides midstream services to independent producers of oil and gas products.[6] SemGroup purchases petroleum products from oil and gas producers and others, exchanges oil and gas with various entities, and also sells oil and gas to a variety of entities. Id. In order to manage exposure to fluctuations in commodities prices, SemGroup also entered into derivatives transactions.[7]

2.     J. Aron & Company ("J. Aron") is the commodities trading arm of Goldman Sachs. SemGroup and J. Aron were parties to an ISDA Master Agreement, including the schedule thereto (the "Schedule") and the Credit Support Annex to the Schedule (the "CSA"), each dated as of November 19, 2007, various confirmations with respect to derivative and purchase and sale transactions entered into between the parties, and a Guaranty, dated September 30, 2004 (the "Guaranty") (the ISDA Master Agreement, Schedule, CSA, certain Bridged Agreements, as defined below, the Guaranty and all related confirmations, each as amended from time to time, are collectively referred to as the "Trading Agreement"). In their Answer in the Tender Litigation, the Debtors admit to the existence and enforceability of the Trading Agreement.[8]

3.     The Trading Agreement contains a "bridging provision," which extends the terms of the Trading Agreement to all energy-related agreements between SemGroup and J. Aron (the "Bridged Agreements"). See Reply Br. of J. Aron to Objections to its Mot. to Intervene in State-Specific Adversary Proceedings (the "J. Aron Reply Br.") Ex. 1 (Schedule, Part 7) [D.I. 3174].

---

[6]     Ronan Decl. ¶ 5 [D.I. 19]. Unless otherwise indicated, docket numbers refer to the docket of the Debtors' bankruptcy proceeding, In re SemCrude, L.P., Case No. 08-11525 (BLS).

[7]     Id. ¶ 9

[8]     See, e.g., Adversary Compl. ¶¶ 14, 15 [D.I. 1 in Adv. Case No. 09-50038]; Debtors' Answer ¶¶ 14, 15 [D.I. 30 in Adv. Case No. 09-50038].

Under the bridging provision, an event of default under the Trading Agreement constitutes an event of default under all Bridged Agreements. See id. Part 7(c)(i), (e)(i)(A). Upon termination, the express terms of the Trading Agreement require the parties to liquidate and net all outstanding obligations, including obligations under any Bridged Agreement, and to determine a single amount owing thereunder (the "Amount Owing") through a contractually defined netting formula and subject to the deductions discussed below. See J. Aron Reply Br. Ex. 1 (ISDA Master Agreement §§ 6(a), (e); Schedule Part 1(f)). In their Answer in the Tender Litigation, the Debtors admit to the existence and enforceability of these contractual provisions.[9]

      4.      Under the Trading Agreement, SemGroup is obligated to "indemnify and hold harmless [J. Aron] for and against all reasonable out-of-pocket expenses, including legal fees . . . incurred by [J. Aron] by reason of the enforcement and protection of its rights under [the Trading Agreement]." J. Aron Reply Br. Ex. 1 (ISDA Master Agreement § 11). In addition, SemGroup warranted to J. Aron that it had good title to the oil it delivered, and that such oil was "free from all royalties, liens, [and] encumbrances . . ."[10] and SemGroup agreed to "indemnify and hold [J. Aron] harmless from all costs and expenses, including reasonable attorneys fees, incurred in the exercise of its remedies."[11] Thus, J. Aron is contractually entitled to recover its legal fees and expenses incurred, *inter alia*, in connection with proceedings brought by any person or entity, whether currently known or unknown, who has asserted or may assert some right or claim against J. Aron which seeks to deprive J. Aron of the benefits of its contractual arrangements (the "Contractual Indemnities"). In their Answer in the Tender Litigation, the Debtors admit to the

---

[9]     See, e.g., Adversary Compl. ¶¶ 14, 15; Debtors' Answer ¶¶ 14, 15.

[10]     J. Aron Reply Br. Ex. 2 ¶ B (ConocoPhillips General Provisions, Domestic Crude Oil Agreements, effective Jan. 1, 1993, as incorporated by Confirmation, dated Apr. 29, 2008, between J. Aron and SemGroup.

[11]     J. Aron Reply Br. Ex. 3 at 3 (Apr. 29, 2008 Confirmation).

existence of these contractual provisions.[12] Additionally, the terms of the Trading Agreement provide that J. Aron has the right to net or set off "any obligation" against the Debtors and the Funds, "whether or not matured or contingent," J. Aron Reply Br. Ex. 1 Schedule § 5(f), including the indemnity, warranty, and attorneys' fees and other expenses obligation that the Debtors owe J. Aron under the Trading Agreement.

5.      Accordingly, the legal fees and costs to which J. Aron is entitled specifically include, without limitation, the legal fees and costs now being incurred by J. Aron in connection with the Tender Litigation, the expedited State-Specific Adversary Proceedings (the "Producers Litigation") before this Court, and in numerous separate proceedings brought outside the Bankruptcy Court by members of the Official Producers Committee (the "OPC"), Samson Resources Company, Samson Lone Star, LLC, Samson Contour Energy E&P, LLC (collectively, "Samson"), New Dominion, LLC ("New Dominion"), and other producers.

6.      Prior to the Petition Date, J. Aron terminated all transactions under the Trading Agreement and exercised its express contractual rights to settle the transactions on a net basis.

7.      On November 1, 2008, J. Aron executed a Stipulation with SemGroup under which the Debtors agreed to J. Aron's calculation of the netting of the amounts owed by J. Aron to SemGroup. As SemGroup explained in its motion to approve the Stipulation, "[a]fter reviewing SemGroup's own records, as well as the calculations provided by J. Aron, SemGroup believes that $89,776,874 is due and owing to SemGroup."[13] The proposed order approving the Stipulation provided that payment of that amount "constitute[d] full and complete satisfaction for all amounts that are or may be owed by either SemGroup or J. Aron arising from or relating to

---

[12]      See, e.g., Adversary Compl. ¶ 15; Debtors' Answer ¶ 15.

[13]      The sum of $89,776,874, includes a small setoff, as well as "netting."  Debtors' Mot. for Approval of Stip. of Settlement between SemGroup and J. Aron ¶ 13 [D.I. 1982].

the Trading Agreement or the transactions thereunder, and extinguishes all obligations J. Aron and SemGroup may owe under the Trading Agreement or arising from the transactions thereunder." Id. Ex. A ¶ 4 (Proposed Order). The proposed order further provided that "[n]either J. Aron nor SemGroup shall have any further liability for payments to other parties arising from or relating to transactions covered by the Trading Agreement." Id. The Debtors moved this Court for approval of that settlement on November 3, 2008, but following opposition to the Stipulation,[14] the Debtors withdrew the motion without prejudice on November 25, 2008.

8.    To facilitate the orderly and efficient resolution of any and all disputes surrounding the Stipulation and the Tendered Amount, on January 20, 2009, J. Aron filed its Motion to Intervene in State-Specific Adversary Proceedings [D.I. 2850] and initiated an adversary proceeding by filing its Adversary Complaint for Declaratory Judgment (the "Tender Adversary"). Based on the Court's rulings at the February 26, 2009 omnibus hearing and the Court's Order dated March 24, 2009, granting J. Aron's intervention in the Producer Litigations [D.I. 116 in Samson Res. Co. v. SemCrude, L.P., Adv. Case No. 08-51445 (BLS)], all issues arising out of the Trading Agreement – including J. Aron's obligations in connection therewith vis-à-vis the Debtors, any and all Producers, and the Banks – will be resolved by this Court, either in the expedited Producers Litigations or, if necessary thereafter, in J. Aron's separate Tender Adversary.

9.    Various producers also filed myriad lawsuits seeking relief substantively identical to that sought in the consolidated Producers Litigation – in numerous other jurisdictions outside the Bankruptcy Court – against J. Aron and other downstream purchasers of oil and gas products from the Debtors (collectively, the "Downstream Purchasers"). To promote judicial efficiency, prevent the inequity of inconsistent results and avoid the danger of double payment by the

---

[14]     See, e.g., OPC Obj. to Stip. of Settlement between SemGroup and J. Aron [D.I. 2138].

Downstream Purchasers, all of federal district courts for which briefing has been completed have granted motions to transfer to the District of Delaware (or directly to the Bankruptcy Court).[15] A number of other actions brought by Samson seeking relief substantively identical to that sought in the Producers Litigation remain outside of the Delaware federal courts. Motions have also been filed to transfer these cases to this Court.[16]

10.     On March 30, 2009, the Debtors filed their Answer and Counterclaims in the Tender Adversary. In their Answer, among other denials, the Debtors specifically deny that indemnities for legal fees and expenses are owed to J. Aron for litigation arising out of and related to the Trading Agreement. See, e.g., Debtors' Answer ¶ 15; id. at 10-11 (setting forth the Debtors' claims to the Tendered Amount and alleging that J. Aron "is not entitled to . . . attorneys' fees"). In its Counterclaims, the Debtors assert, *inter alia*, that (i) J. Aron has breached its contracts with SemGroup by failing to pay money purportedly owed under the Trading Agreement, see Debtors' Counterclaim ¶ 18; (ii) J. Aron has engaged in an improper

---

[15]     See New Dominion, L.L.C. v. BP Oil Supply Co., Case No. 09-50978 (BLS) (Bankr. D. Del.); Samson Res. Co. v. BP Oil Supply Co., Case No. 09-51070 (BLS) (Bankr. D. Del.); Samson Res. Co. v. ConocoPhillips Co., Case No. 09-51518 (BLS) (Bankr. D. Del.); Hope Partners, Inc. v. BP Oil Supply Co., Case No. 09-51519 (BLS) (Bankr. D. Del.); Samson Res. Co. v. J. Aron & Co., Case No. 09-51520 (BLS) (Bankr. D. Del.); Samson Lone Star, LLC v. BP Oil Supply Co., Case No. 09-51941 (BLS) (Bankr. D. Del.); IC-CO Inc. v. J. Aron & Co., Case No. 09-cv-477 (GMS) (D. Del.); New Dominion, LLC v. J. Aron & Co., Case No. 09-cv-478 (GMS) (D. Del.); Degge v. ConocoPhillips Co., Case No. 09-cv-479 (GMS) (D. Del.); Samson Lone Star LLC v. ConocoPhillips Co., Case No. 09-cv-658 (SLR) (D. Del.).

[16]     See, e.g., Samson Res. Co. v. Coffeyville Res. Refining & Marketing, LLC, Case No. 09-cv-272 (HE) (W.D. Okla.), Samson Res. Co. v. Sunoco Logistics Partners, L.P., Case No. 09-cv-135 (GKF) (N.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-807 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-808 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-810 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-811 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-812 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-813 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-814 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-815 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-816 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-817 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-818 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-819 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-820 (HE) (W.D. Okla.), Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-865 (LAM-KBM) (D. N.M.), and Samson Res. Co. v. Valero Marketing & Supply Co., Case No. 09-cv-863 (WPL-LAM) (D. N.M.).

setoff, see Debtors' Counterclaim ¶ 14; (iii) J. Aron is obligated to turnover the Tendered Amount, see Debtors' Counterclaim ¶ 25; (iv) the Debtors are entitled to a declaration that the Tendered Amount is property of their estates, see Debtors' Counterclaim ¶ 32; (v) the Debtors hold a conditional claim against J. Aron for additional amounts for which J. Aron may be obligated under any lien or trust claims, see Debtors' Counterclaim ¶ 33; and (vi) the Debtors may have additional claims against J. Aron and reserve their rights to assert those claims that may be "discovered or developed during discovery" if they have merit, see Debtors' Counterclaim ¶ 34.

11.     At the same time, SemGroup filed a Turnover Motion seeking turnover to its estates of certain sums it believes are due and owing from J. Aron.  In relevant part, the two-page motion contained the following conclusory allegations: (i) J. Aron is entitled to none of the Tendered Amount; (ii) the Tendered Amount is owed to SemGroup pursuant to the Trading Agreement; (iii) the Tendered Amount is matured, liquidated, past due and payable on demand; (iv) the Debtors are entitled to turnover of the Tendered Amount pursuant to 11 U.S.C. §§ 363, 542(a) and Federal Rule of Bankruptcy Procedure 7001(1); and (v) pre- and post-judgment interest and costs are due from J. Aron on the Tendered Amount.

12.     On June 2, 2009, J. Aron and SemGroup reached a settlement memorialized in the Court-approved Tender Order whereby J. Aron deposited $89,776,874 in an escrow account under this Court's jurisdiction, subject to the explicit terms and conditions specifying J. Aron's rights in and arising out of the tendered *res* that are discussed herein.

13.     The Tender Order was the result of extensive negotiations between J. Aron, the Debtors, and the OPC over six weeks in April and May 2009.  See Davis Decl. ¶ 4.  The purpose of the negotiation was to reach a resolution that contained protections for J. Aron prior to turning

over any funds to the Court. Id. ¶¶ 5-7. J. Aron negotiated the terms of the order entered by the Bankruptcy Court with the Debtors and OPC with the clear expectation, as set forth in the language agreed upon, that the Funds would remain undisturbed until all claims to the Funds, including J. Aron's claims, have been resolved by the Bankruptcy Court. Id. ¶¶ 7-14.

14. J. Aron, the Debtors, and the OPC were involved in numerous phone calls and email correspondence regarding the terms to be submitted to the Court, including exchanges of multiple drafts of the Tender Order. See id. ¶¶ 8-14. J. Aron made clear to the Debtors and the OPC that it was critical that the competing claims to the Funds be adjudicated by the Bankruptcy Court to avoid the real risk that J. Aron would be forced to pay twice on claims to oil purchased from the Debtors. See id. ¶¶ 11-12. And this was made clear in open court at the June 2, 2009 hearing at which the Court approved the Tender Order. Davis Decl. ¶ 16, Ex. 6 (June 2 Hr'g Tr.)at 36:6-37:20. On multiple occasions, J. Aron made clear to the Debtors that under the terms of the Tender Order, the Debtors cannot access the Funds until any and all claims have been fully adjudicated and the time for any appeal has expired. Id. ¶¶ 5-6, 11-12, 15.

## ARGUMENT

## I. THE DEBTORS HAVE NO RIGHT TO RELEASE THE ESCROWED FUNDS UNDER THE TENDER ORDER

The Debtors have totally ignored the explicit terms of the Tender Order and its negotiating history and make no reference to them in their motion. The reason for this is obvious – those terms are entirely inconsistent with the relief requested.

### A. The Terms of the Tender Order Do Not Allow Release of the Funds Prior to the Adjudication of Rights in the Tendered Funds

Contrary to the Debtors' contentions that "[t]he Tendered Funds are property of the estate, and were paid into escrow by the Tender Plaintiffs because – among other reasons –

there was no dispute that at least these amounts were due and owing pursuant to the Tender

Plaintiffs' prepetition dealings with the Debtors," Motion ¶ 3, the Tender Order in no way

proceeded on the assumption that the funds tendered were the property of the estate. Exactly the

opposite. It was written on the basis that there are many competing claims to the Funds and that

the Funds will be held in escrow until those competing claims are resolved in the Bankruptcy

Court. See Davis Decl. ¶ 16, Ex. 6 (June 2 Hr'g Tr.) at 39:20-24 (June 2, 2009 Hr'g Tr.) ("any

person who has a claim to the funds shall make that claim in this Court and against such funds").

With respect to J. Aron's claims to the Funds, it provides that those claims will remain in both

substance and priority as if the Funds had never been tendered. The assertion that the Tender

Order somehow adjudicated J. Aron's claims and found them to be meritless could not be further

from the truth.

Here is what the Tender Order in its entirety actually says, with those portions

that most directly refute the Debtors' assertions here in boldface:

- First, the Tender Order provides that J. Aron tenders the Funds expressly subject
  to its claims for indemnity, breach of warranty, attorneys' fees and other
  expenses: "The Court, having been advised of the agreement of the Plaintiff and
  the Debtors," orders "that [J. Aron] shall turnover $89,776,874 (the "Funds") to
  the Debtors, **without prejudice to [J. Aron's] claims against SemGroup for
  indemnity, breach of warranty, attorneys' fees and other expenses pursuant
  to the Agreements (as described in the Complaint)**, and without prejudice to
  the defenses of SemGroup to [J.Aron's] claims for indemnity, breach of warranty,
  attorneys' fees and other expenses pursuant to the Agreements (as described in the
  Answer of SemGroup)." Tender Order at 1 (emphasis added).

- The order then provides, "[t]he Court shall have jurisdiction over the Funds." Id.

- J. Aron's rights, just preserved, are then secured by the next sentence:

  **"Plaintiff's rights to recover from the Funds in respect of its claims thereto, and its priority in payment with respect to such recovery, <u>shall be the same as if the Funds had not been paid to the Debtors hereunder and continued to be in the Plaintiff's possession.</u>"** Id. at 1-2 (emphasis added).

- The order then provides for the deposit of the funds into escrow to be held as if deposited into court. "The Funds shall be deposited by the Debtors, under a Debtor's tax identification number, in a separate, interest bearing account to be **held by the Debtors, subject to further order of the Court as if deposited in Court**." Id. (emphasis added).

- Because the funds are held so that all claims in them may be resolved, the order provides for notice to all persons having such claims. "Notice of this order and any and all claims to the Funds shall be filed in and served on all parties to this action via the CM/ECF system; and notice of this order shall be filed (and served on all parties by the CM/ECF system) in each of the eight adversary proceedings in the Producer Litigation (nos. 08-51444 (Texas), 08-51445 (Oklahoma), 08-51446 (Kansas), 08-51448 (New Mexico), 08-51453 (Missouri), 08-51454 (Colorado), 08-51455 (North Dakota), 08-51458 (Wyoming)); and filed in In re SemCrude, _et al._, Case No. 08-11525 (BLS) (Bankr. D. Del) (collectively, the "Producer Adversaries"). Debtors shall file and serve notice of this order as aforesaid." Id. at 2.

14

- The next sentence then provides that the funds distributed to those entitled thereto pursuant to the order will not be so distributed unless the Court orders the disbursement and the time to appeal the ruling giving rise to the disbursement has run: "No Funds shall be released or distributed to any person without further order of the Court, and the time for any appeal or further appeal from any such order has expired." Id.

- The Order then releases J. Aron for any claim to the Funds by anyone with claims to the Funds, including the Producers and the Debtors; it does not, however, operate to release J. Aron's continuing claims to the Funds for breach of warranty, attorneys' fees, and indemnity: "In consideration for remitting the Funds to be held by Debtors as aforesaid, [J. Aron] shall be and hereby is released from all claims to the Funds remitted to the Debtors pursuant to this Order, and for any accrual of interest on the sum remitted from and after the date the Funds are remitted to the Debtors, by any person having a claim to or an interest in the Funds." Id.

- The next sentence protects J. Aron against the risk of <u>double payment</u> for these funds – *i.e.*, the risk that it would have to pay the Debtors for its purchase of oil and then also have to pay a Producer under a lien or trust claim, and it preserves J. Aron's rights to claim against or set-off against the funds for its breach of warranty, indemnity, and attorneys' fees claims: "**Any person who has a claim to the Funds shall make that claim in this Court and against such funds, or that claim is barred and released to the full extent of the amount remitted by Plaintiff together with the accrued interest thereon.**" Id. (emphasis added).

15

- Then, at the request of the OPC, the next two sentences preserve the right of certain Producers to object to this Court's jurisdiction over their lien/trust claims against J. Aron and provide a contingency for deposit of the funds *with another Court empowered to determine their proper distribution* in the event it were determined that this Court does not have jurisdiction over the Tender Adversary or the Funds: "The failure of any person or entity to object to this Court's taking jurisdiction over the Funds and resolving competing claims to the Funds as herein provided shall not be deemed a consent to jurisdiction of this Court over that person, entity or any other claims. In the event this Court or an appellate court in a final non-appealable order determines this Court lacks subject matter jurisdiction over the above-captioned matter or the Funds, the Debtors or any authorized person appointed by the bankruptcy court or in a plan of reorganization approved by this Court **shall deposit the Funds with a court that has subject matter jurisdiction for a determination by that court as to the proper distribution of the Funds.**" Id. at 2-3 (emphasis added).

- The final sentence preserves all parties' claims and defenses except to the extent of the releases set forth in the Order. In other words, it again confirms that the Tender Order adjudicates no substantive right and certainly does not determine that J. Aron's claims to the Funds are meritless. "**The turnover of the Funds to the Debtors as set forth herein does not constitute a waiver of any claims or defenses [J. Aron] may have against the Debtors or any other person or entity**, nor of any claims or defenses the Debtors may have against the Plaintiff or any other person or entity, nor of any claims or defenses any other party-in-

interest in these Chapter 11 proceedings may have against the Plaintiff, the

Debtors, or any other person or entity, except with respect to the Funds turned

over, for which Plaintiff is released as set forth above." Id. at 3 (emphasis added).

**B.      The Negotiating History Belies The Debtors' Claims About The Funds**

The Tender Order was not crafted casually.   In fact, quite the opposite is true –

the language in the agreed-upon order was the product of extensive negotiations between J.

Aron, the Debtors, and the OPC that took six weeks. See Davis Decl. ¶ 4.  The Debtors would

have this Court pretend that the Tender Order simply does not exist, and that the specifically

bargained-for protections afforded J. Aron by its terms can be cast aside as meaningless.

Nothing could be further from the truth.  The Debtors knew exactly what was in the Tender

Order, knew why it was important to J. Aron, and specifically requested that this Court enter the

order with these protections plain for all to see.

According to all parties, the Debtors also obtained significant benefits from the

Tender Order.  In addition to eliminating J. Aron's credit risk, the Tender Order significantly

aided the Debtors' effort to cement the Bankruptcy Court as the sole forum for the resolution of

the Producers' claims.  To further assist that outcome, the Debtors filed multiple oppositions in

this Court to Samson's, New Dominion's, and the IC-CO plaintiffs' motions to dismiss J. Aron's

tender adversary seeking to adjudicate these claims in this Court and the Debtors sent a letter to

Samson's counsel asking it to stop pursuing its duplicative claims outside of this Court.[17]  And as

previously noted, to date, six courts have relied on the existence of the Tender Orders and these

---

[17]      Davis Decl. ¶ 16 Exs. 7, 8, & 9.

arguments to transfer these cases to this Court, including the Tenth Circuit, which denied

Samson's petition for a writ of mandamus seeking to block that transfer.[18]

J. Aron entered into the Tender Order with clear expectations – expectations that

are evidenced by the terms of the order itself – that the Funds would remain undisturbed until the

Bankruptcy Court resolved all of the competing claims to the Funds. See Davis Decl. ¶ 5-6, 11-

12, 15. This Motion, an Orwellian example of making history disappear, clearly contravenes not

only the plain language of the Tender Order, but also ignores the extensive negotiations that took

place to get the language of the agreement exactly right.

In the days leading up to the submission of the Tender Order for the Court's

approval, the negotiations consisted of numerous phone calls and emails between J. Aron, the

Debtors, and the OPC to work out a resolution acceptable to all. See Davis Decl. ¶¶ 4-14.

During this time, J. Aron made clear that it was critical that the Tender Order contain protections

against J. Aron having to pay twice for the oil it purchased from the Debtors. See id. ¶ 11 (Ex. 3,

May 26, 2009 Email from Evan Davis to Andy Turner:  "I want to mention again the reason why

the decision as to distribution of the Funds must be centralized in the Bankruptcy Court – if it is

not we will be subject to a real risk of paying twice. . . ."; id., May 27, 2009 Email from Evan

Davis to Andy Turner:  "Here is an alternate substitute for the problem sentence that would also

protect us against the risk of paying twice. . . .").  Following a conference call on May 27

between J. Aron and the Debtors, the Debtors provided a revised draft of the Tender Order that

---

[18]    See New Dominion, L.L.C. v. BP Oil Supply Co., Case No. 09-50978 (BLS) (Bankr. D. Del.); Samson
Res. Co. v. BP Oil Supply Co., Case No. 09-51070 (BLS) (Bankr. D. Del.); Samson Res. Co. v. ConocoPhillips Co.,
Case No. 09-51518 (BLS) (Bankr. D. Del.); Hope Partners, Inc. v. BP Oil Supply Co., Case No. 09-51519 (BLS)
(Bankr. D. Del.); Samson Res. Co. v. J. Aron & Co., Case No. 09-51520 (BLS) (Bankr. D. Del.); Samson Lone Star,
LLC v. BP Oil Supply Co., Case No. 09-51941 (BLS) (Bankr. D. Del.); IC-CO Inc. v. J. Aron & Co., Case No. 09-
cv-477 (GMS) (D. Del.); New Dominion, LLC v. J. Aron & Co., Case No. 09-cv-478 (GMS) (D. Del.); Degge v.
ConocoPhillips Co., Case No. 09-cv-479 (GMS) (D. Del.).  Samson Lone Star LLC v. ConocoPhillips Co., Case No.
09-cv-658 (SLR) (D. Del.); In re Samson Res. Co., Nos. 09-5113, 09-5114 & 09-5115 (10th Cir. Aug. 20, 2009)
(denying mandamus petition).

18

included a number of the provisions that J. Aron had insisted be included, including the requirement that all competing claims to the Funds be adjudicated by the Bankruptcy Court. See id. ¶ 12. When providing that draft, the Debtors acknowledged that "the OPC is likewise in agreement" with the revised draft. See Davis. Decl. ¶ 12 & Ex. 4. The next day, there were further email communications between J. Aron and the Debtors where J. Aron provided additional comments clarifying the text of the order – comments that were acceptable to the Debtors. See id. ¶ 13 & Ex. 5. On May 29, 2009, after yet another conference call between J. Aron and the Debtors, the Tender Order was finalized. See id. ¶ 14 & Ex. 5.

As if the plain language of the Tender Order and the fact that its terms were heavily negotiated is not enough to expose the Motion for the make-it-disappear act that it is, the argument before the Bankruptcy Court, including both J. Aron's and the Debtors' statements urging the Court to enter the Turnover Order, plainly confirms what was agreed. J. Aron's counsel explained to the Court, "One of the key points that this order does accomplish is to eliminate for J. Aron any risk of double payment as to these funds, which, frankly, made the original proposal unacceptable, and we think we've solved that problem by Your Honor taking jurisdiction, as Mr. Turner said, over a *res* of this $89 million." Davis Decl. ¶ 16, Ex. 6 (June 2 Hr'g Tr.) at 36:17-23 (June 2, 2009 Hr'g Tr.). The Debtors now proceed as if they had obtained the original, unacceptable, proposed order for turnover of funds. But they did not.

The Debtors' counsel plainly stated the effect of the Tender Order while arguing for turnover of funds from ConocoPhillips, another one of the Tender Plaintiffs. Counsel for the Debtors explained to the Court, "I want this money where it's safe and secure and where everybody can see it and everybody can assert their claims against it." Id. at 54:13-16. Even this Court, in the context of postponing the ConocoPhillips turnover decision, acknowledged the

protections that the Tender Order afforded J. Aron: "Now, I don't necessarily disagree with the debtor that [the ConocoPhillips turnover] issue is ripe for the disposition consistent with I think the protections that have been accorded to J. Aron and BP . . . ." Id. at 57:16-20.

Accordingly, the Debtors' claim that "the Motion is consistent with all parties' expectations including those of the Tender Plaintiffs" is absurd. The Debtors knew full well what J. Aron's expectations were when entering into the Tender Order, acknowledged those expectations by agreeing to the protections J. Aron insisted upon prior to turning over the Funds, and made representations to the Court consistent with that understanding.

## II.    THE BANKRUPTCY CODE PROTECTS J. ARON'S RIGHTS AND FORBIDS THE DEBTORS' REQUESTED RELIEF

J. Aron's rights to indemnity, breach of warranty, attorneys' fees and other expenses pursuant to the Trading Agreement are not only protected by the Tender Order, but are also secured rights of netting and setoff or other rights expressly protected by the Bankruptcy Code that allow J. Aron to set off those claims against the Funds. Under the terms of the Trading Agreement, J. Aron has the right to net or set off "any obligation" against the Debtors and the Funds, "whether or not matured or contingent," J. Aron Reply Br. Ex. 1 (Schedule § 5(f)), including the indemnity, warranty, and attorneys' fees and other expenses obligation that the Debtors owe J. Aron under the Trading Agreement. Under 11 U.S.C. § 506(a), J. Aron's netting and setoff claims for indemnity and breach of warranty are secured claims: "An allowed claim of a creditor . . . subject to a right of setoff under section 553 of this title is a secured claim. . . ." Additionally, to the extent J. Aron's claims are oversecured by the Funds, under Section 506(b) J. Aron's continually accruing claim for substantial attorneys' fees and other expenses is protected up to the amount of the oversecurity. See In re Szymanski, 2009 WL 2870008, at *16

(Bankr. E.D. Pa. Aug. 12, 2009) (oversecured creditor with a right of setoff is entitled to rights under 506(b)); In re Rozel Indus., Inc., 120 B.R. 944, 948 (Bankr. N.D. Ill. 1990) (same).

As a secured creditor under Section 506 whose netting and setoff rights are secured by the Funds, J. Aron is entitled, at a minimum, to the protections provided secured creditors under the Bankruptcy Code, including those of Section 363. As the Debtors seek to "use" the Funds that they deem to be "property of the estate," 11 U.S.C. § 363(b), and the Funds are "cash [or] deposit accounts" in which J. Aron, "an entity other than the estate ha[s] an interest," id. § 363(a), J. Aron is entitled under Section 363(e) to adequate protection, and the Motion must be denied in the absence of that protection. Id. § 363(e) ("Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.") (emphasis added); see In re Patterson, 967 F.2d 505, 511-12 (11th Cir. 1992) (parties seeking to protect a right of setoff in accounts may seek protection under 11 U.S.C. § 363(e)); In re Flynn, 143 B.R. 798, 802 (Bankr. D.R.I. 1992) (same); see also In re Trans World Airlines, Inc., 275 B.R. 712, 718 (Bankr. D. Del. 2002) (setoff rights in accounts receivable adequately protected against debtor by preserving those rights in sale order selling accounts to third party).

J. Aron's netting and setoff rights against the Funds are further protected by the Code's safe harbors for just these kinds of netting and setoff provisions under J. Aron's Trading Agreement. First, J. Aron's right to net or set off its breach of warranty, indemnity, and attorneys' fees and other expenses claims, as a "forward contract merchant," is a "security arrangement" or "credit enhancement" "forming a part of . . . [a] forward contract" and a

"contractual right . . . to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such contracts, including any master agreement for such contracts" under 11 U.S.C. § 362(b)(6), and is thus not subject to the automatic stay. 11 U.S.C. § 362(b)(6). Second, 11 U.S.C. § 362(o) provides that the exercise of these rights "shall not be stayed by any order of a court . . . in any proceeding under this title." These provisions elevate J. Aron's netting and setoff rights against the Funds above the Debtors' rights, and they cannot be interfered with under Sections 105, 362, or any other provision of the Bankruptcy Code.

## III. THE DEBTORS DO NOT MEET THE REQUIREMENTS FOR TURNOVER AND PROVIDE NO ADDITIONAL BASIS FOR THE RELIEF SOUGHT HERE

### A. The Debtors Are Not Entitled to Turnover of the Funds Under Section 542(b) Because the Funds Are Subject to J. Aron's Setoff Rights, Because Title to the Funds Is in Dispute, and Because the Debtors' Attempt to Seek Turnover by Motion Is Procedurally Defective

The Motion, otherwise wholly lacking in any legal authority, claims without discussion or support that Section 542(b) provides a basis for turnover of the Funds. Motion ¶ 10. As a threshold matter, Section 542(b) contains an express exception for setoff rights such as those asserted here by J. Aron, providing that a debt is exempted from turnover to the extent that it is subject to lawful offset:

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b) (emphasis added). See also, e.g., In re Nase, 297 B.R. 12, 21 (Bankr. W.D. Pa. 2003) (a debtor cannot employ Section 542(a) to negate an otherwise proper setoff); In re TM Carlton House Partners, Ltd., 93 B.R. 859, 871 (Bankr. E.D. Pa. 1988) (where payments to debtor were subject to setoff, "rights of the Debtor to turnover of all pre-petition payments are

22

limited by the terms of 11 U.S.C. § 542(b)"). Under the Trading Agreement and consistent with Section 362 of the Code, see supra Section II, J. Aron possesses substantial setoff rights in the Funds at issue based on its claims for indemnity, breach of warranty, attorneys' fees and other expenses. For this reason alone, the Debtors' motion for turnover under Section 542(b) must fail.

In addition, Section 542 does not contemplate the turnover of disputed property and its invocation in this proceeding is at best premature and meritless. See In re Am. Home Mortgage Holdings, Inc., 388 B.R. 69, 94 (Bankr. D. Del. 2008) (dismissing turnover action as premature because damages claim under contract was in dispute). Before seeking turnover of disputed property in an adversary proceeding, a debtor must establish its rights to the subject property are undisputed. See id. In re Student Fin. Corp., 335 B.R 539, 554 (D. Del. 2005) ("[I]n order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate."); In re Pa. Gear Corp., 2008 WL 2370169, at *4 (Bankr. E.D. Pa. Apr. 22, 2008) (dismissing turnover claim for amount of account receivable because "turnover under § 542 of the Code is not intended as a remedy to determine disputed rights of parties to property"). The burden of proving that the assets at issue are part of the bankruptcy estate falls squarely on the debtor or trustee, see, e.g., In re Allegheny Label, Inc., 128 B.R. 947, 955 (Bankr. W.D. Pa. 1991) (in a turnover action "the trustee must establish, by clear and convincing evidence, that the assets at issue are part of the bankruptcy estate") (emphasis in original), and the Debtors cannot meet this burden under Section 542 for at least three reasons.

First, there can be no question that the underlying *res* at issue here is very much in dispute. The Producers have attempted – on many occasions in many courts across many states

– to pursue claims against the very same receivables to which the Debtors now seek to lay claim. These Producer claims have not only been raised in this proceeding, to which the Debtors are party and in which they many be efficiently and comprehensively resolved, but also in numerous actions originally brought in Oklahoma and Texas that have been transferred to this Court and in over a dozen more recent actions which remain for the time being in various courts in Oklahoma and New Mexico. In cases such as this one where a debt is disputed, this Court requires a final judgment authorizing the collection of the disputed debt before Section 542 can be employed. See In re Am. Bus. Fin. Servs., Inc., 361 B.R. 747, 761 (Bankr. D. Del. 2007) (turnover claim for money debt was premature because trustee first "must get a judgment to collect"); see also Ches-Mont Utils. Constr. Co. v. Willistown Woods Assocs., 1992 WL 96335, at *2 (E.D. Pa. Apr. 24, 1992) ("to recover money from defendant, his liability must be undisputed" and "[l]iability is not undisputed unless there is 'a final judgment from a court of competent jurisdiction or a stipulation by the defendant'") (emphasis added) (citation omitted). Until and unless this Court issues a final judgment adjudicating all conflicting claims by the parties in this proceeding to the underlying *res*,[19] the Debtors are not entitled to claim the J. Aron funds under Section 542(b).

Second, turnover under Section 542(b) would not be equitable because it would subject J. Aron to a serious risk of double payment in connection with the competing Producer lien and trust claims. J. Aron's consent to the Tender Order was expressly conditioned upon the inclusion therein of a complete "release[] from all claims to the Funds remitted . . . by any person having a claim to or an interest in the Funds." Tender Order at 2. Various Producers are actively pursuing such claims against the Funds, as detailed above, and granting the relief requested in

---

[19]     Indeed, a number of Producers have continued to deny that this Court even has jurisdiction over the dispute between the Producers, J. Aron, and the Debtors in connection with this *res*. Invocation of Section 542 is clearly premature before the resolution of these threshold jurisdictional issues.

the Motion would threaten to erase any protection J. Aron has against the risk of double payment. Courts have recognized that Section 542 should not be invoked prematurely precisely because of the plain inequity in foisting upon one party such risks. In re FLR Co., 58 B.R. 632, 634 (Bankr. W.D. Pa. 1985) (analogizing turnover action to an injunction for specific performance and dismissing such action because "[t]o award specific performance of the progress money payments . . . while other aspects of the same contracts are in dispute . . . would not be equitable, unless adequate protection were offered to [the defendant]").

       Third, even if the competing producer lien and trust claims are ultimately found to lack merit (as J. Aron has elsewhere demonstrated they will be and this Court has agreed, in part), the Debtors concede – as they must – that they have agreed to "indemnify and hold [J. Aron] harmless from all costs and expenses, including reasonable attorneys fees, incurred in the exercise of its remedies."[20] Adversary Compl. ¶ 15; Debtors' Answer ¶ 15. Under Section 542(b) (and under the express terms of the Tender Order), J. Aron may rely on such indemnification rights to reduce any amount that would otherwise be due and owing to the Debtors under the Trading Agreement. The dispute over the Debtors' indemnification obligations is one of the precise reasons that the underlying Adversary Complaint for declaratory relief was commenced under Federal Rule of Bankruptcy Procedure 7001. See, e.g., Adversary Compl. ¶¶ 14, 15, 25-28 (requesting declarations enforcing, inter alia, J. Aron's rights under the Trading Agreement, for the indemnification and recoupment). Until J. Aron's indemnification claims are adjudicated by the Court, this ongoing dispute provides an additional, independent barrier to the Debtors' invocation of Section 542. See Am. Bus. Fin. Servs., Inc., 361 B.R. at 761.

---

[20]      J. Aron Reply Br. Ex. 3 at 3 (Apr. 29, 2008 Confirmation).

In sum, "[w]here there is a legitimate dispute about the ownership of property a trustee seeks to recover, turnover under section 542 is not appropriate," In re Lexington Healthcare Group, Inc., 363 B.R. 713, 716 (Bankr. D. Del. 2007), and because numerous such disputes persist with respect to the Funds, the Debtors' Motion must fail.

Finally, the Debtors' attempt to seek turnover merely by filing a "Motion in Aid of Confirmation of Plan" runs contrary to the Federal Rules of Bankruptcy Procedure. Rule 7001(1) mandates that the rules governing adversary proceedings apply to any claim seeking "to recover money or property," Fed. R. Bankr. P. 7001(1), and thus explicitly encompasses claims for turnover under Section 542. See In re Perkins, 902 F.2d 1254, 1258 (7th Cir. 1990) (holding that "turnover action is an adversary proceeding" under Rule 7001). In other words, "'before the bankruptcy court may order turnover of property . . . a complaint must be filed, process served, an answer or motion interposed, discovery conducted, a hearing held, and findings of fact and conclusions of law made.'" In re Wheeler Tech., Inc., 139 B.R. 235, 240 (B.A.P. 9th Cir. 1992) (quoting In re Riding, 44 B.R. 846, 859 (Bankr. D. Utah 1984)).

In order to obtain the relief they seek, Debtors in this case must abide by all the rules; having asserted a counterclaim for turnover, they cannot now forego the procedural requirements provided by the Rules, including the filing of a motion for summary judgment pursuant to Rule 7056. See In re Lindsey, 351 B.R. 733, 738 n.15 (Bankr. D. Idaho 2005) ("A 'motion for turnover' would not be a proper means by which [the Debtors] could obtain adjudication of any matters placed at issue under the complaint and the defendants' answers but not yet tried."). These procedural requirements are not empty formalism; to the contrary, they safeguard important fundamental rights by "afford[ing] the parties a fair opportunity to present their sides of the issue, while promoting efficiency and uniformity in practice." In re Riding, 44

B.R. at 859; see also In re Barringer, 244 B.R. 402, 410 (Bankr. E.D. Mich. 1990) ("[T]here are a range of potentially complex considerations which can enter into a determination that property is or is not subject to turnover. It, therefore, should be no surprise that such a determination is to be made in the context of an adversary proceeding."). The Motion, infected with this procedural defect that threatens to undermine J. Aron's fundamental property rights, should be denied.

**B.      None of the Additional Authority Cited by the Debtors Provides Them the Relief They Seek**

The Debtors purport to rely on a variety of Bankruptcy Code sections to justify this extraordinary assault on J. Aron's rights – rights that are clearly protected by the express terms of the Tender Order. In addition to Section 542(b), the Debtors aimlessly cite 11 U.S.C. §§ 105(a), 1129, and 1142(a) in an attempt to cobble together some support for the unjustified and unprecedented relief they seek here. None of these Code provisions aid the Debtors' cause one jot.

Section 105(a), which states, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," adds nothing to the Debtors' cause. As the Third Circuit Court of Appeals has made clear, "[S]ection 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law." S. Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985). The Debtors have no right, under applicable bankruptcy law or otherwise, to seek to disregard the Tender Order entered by this Court that was negotiated and agreed upon by the parties involved.

As Judge Easterbrook succinctly stated, "'The fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be.'" In re Kmart Corp., 359 F.3d 866, 871 (7th Cir. 2004) (quoting In re Chicago, Milwaukee, St. Paul &

Pacific R.R., 791 F.2d 524, 528 (7th Cir. 1986)). See also In re Phar-Mor, Inc. Sec. Litig., 166 B.R. 57, 61 (W.D. Pa. 1994) ("However, while the grant of authority [under § 105(a)] is broad, a court may not create substantive rights in favor of a debtor that are in addition to the rights bestowed by the Code if such rights do not also exist outside of bankruptcy law.").[21]

The Debtors' reliance on Section 1129 is a completely irrelevant red herring. Section 1129 simply lays out the prerequisites that need to be met before the Bankruptcy Court can confirm a plan. See 11 U.S.C. § 1129. The provisions of this section do nothing more than provide the Court with a step-by-step framework for determining whether confirmation of a plan is appropriate. See 7-1129 Collier on Bankruptcy P 1129.02 (15th ed. rev.) ("The court has a mandatory, independent duty to review plans and ensure they comply with the requirements of section 1129.").

Nor does Section 1142 apply here. This provision grants the Court the power to implement and enforce the terms of a confirmed plan. See 11 U.S.C. § 1142; 8-1142 Collier on Bankruptcy P 1142.01 (15th ed. rev.) ("Section 1142 of the Bankruptcy Code governs the implementation of a confirmed plan of reorganization."); see also In re Cinderella Clothing Indus., Inc., 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988) (explaining that Section 1142, which provides for "plan enforcement post-confirmation" provides "a residue, albeit limited, of court authority over a confirmed chapter 11 case."). In this case, there is no confirmed plan. The Debtors' have not even had a disclosure statement approved by the Court. While Section 1142 is

---

[21]     The Court's powers under Section 105 to potentially interfere with J. Aron's netting and setoff rights are also explicitly limited by Section 362(o), which provides that those rights "shall not be stayed by any order of a court . . . in any proceeding under this title." 11 U.S.C. § 362(o).

a valid basis for the Court to enter orders to carry out and implement the provisions of a confirmed plan, it has no application here because no such confirmed plan exists.[22]

Quite plainly, the Debtors have cynically cited these facially irrelevant provisions to assist some argument that any appeal of an order in their favor will be mooted by a confirmed plan. It is an implicit acknowledgment on their part that there is no legal basis for the request being made here.

## CONCLUSION

As noted at the outset, J. Aron has no objection to providing the Debtors access to the Funds they claim are necessary to conclude this case, provided that J. Aron receives the releases that were part of the bargain the Debtors reached with J. Aron at the outset of the proceedings in November 2008. There is no basis, however, for this Court to rewrite the Tender Order or to override J. Aron's substantive setoff and netting rights under its agreements and the Bankruptcy Code simply to aid the Debtors' plan efforts. For the foregoing reasons, J. Aron respectfully requests that the Motion be denied.

Dated: September 22, 2009

Respectfully submitted,

ASHBY & GEDDES, P.A.

Don A. Beskrone (#4380)
Amanda M. Winfree (#4615)
500 Delaware Avenue
Wilmington, DE 19899
Telephone: 302-654-1888
Fax: 302-654-2067

---

[22] This adversary proceeding is, in any event, unrelated to the Debtors' plan except to the extent the Debtors prevail here, it will provide an additional source of funding. If such a nexus were appropriate to invoke the Court's powers under Sections 1128 and 1142, the Debtors could presumably invoke these provisions in all of their pending and planned litigations, in lieu of litigating the merits of these cases. Obviously, the Bankruptcy Code does not operate this way.

-and-

Thomas J. Moloney (Admitted *Pro Hac Vice*)
Boaz S. Morag (Admitted *Pro Hac Vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Fax: 212-225-3999